534        SUPREME COURT OF NEW MEXICO,

Mirabal v. Albu. Wool Scouring Mills, et al., 23 N. M., 534

(No. 2001, December 20, 1917.)

# MIRABAL v. ALBUQUERQUE WOOL SCOURING MILLS et al.

### SYLLABUS BY THE COURT.

1. Upon the appointment of a receiver of an insolvent cor-poration by virtue of section 957, Code 1915, the receiver has full power and authority to demand, sue for, and collect, receive and take into his possession, all the property of the corporation to which it was entitled to the possession. These powers and prerogatives are given to the receiver when he is appointed by the statute, not by order of the court. This being true, and title vesting in him by virtue of the statute, and likewise the right to possession, or, to say the least, the right to sue for possession and recover the same if entitled thereto, the court, at the time of adjudicating the insolvency of the corporation and decreeing that a receiver should be appointed, has not the power, in the same degree, and prior to the appointment and qualification of the receiver, to strip the receiver of these statutory rights and prerogatives.

P. 540

2. Under the statute (section 956, Code 1915), which reg-ulates the procedure for adjudicating the insolvency of a corporation and the appointment of a receiver, the court is without jurisdiction, upon the application for the adjudica-tion for insolvency, to, at that time and in the same proceed-ing, pass upon the validity of a mortgage covering specified property belonging to the corporation.        P. 540

3. As to errors relating to jurisdiction, a plaintiff against whom judgment is rendered is not estopped to assert on ap-peal or error that the court to which he resorted had no jurisdiction of the subject-matter of the suit; hence a peti-tioning stockholder who applies for adjudication of insolven-cy against the corporation, and who makes the mortgagee a party to such proceeding, is not estopped from asserting on appeal that the court had no jurisdiction to pass upon the validity of a mortgage and to award the possession of the mortgaged property to the mortgagee.        P. 544

JANUARY TERM, 1918.        535

Mirabal v. Albu. Wool Scouring Mills, et al., 23 N. M., 534

Appeal from District Court, Bernalillo County; Mechem, Judge.

Suit by Sylvestre Mirabal against the Albuquerque Wool Scouring Mills, First National Bank of Albuquerque, and others, for an adjudication of insolvency, and for an injunction against the Albuquerque Wool Scouring Mills. Judgment adjudging the Albuquerque Wool Scouring Mills insolvent and for an injunction and the appointment of a receiver providing for the presentation of claims, and allowing the claim of the First National Bank of Albuquerque, and plaintiff excepts and appeals. Part of judgment adjudicating the validity of the trust deed to the First National Bank of Albuquerque and awarding possession of the property covered thereby to the trustee named therein reversed.

Neill B. Field, of Albuquerque, for appellant.

The court had no jurisdiction, at the hearing on the question of insolvency, to finally adjudicate the validity of the claim of the First National Bank of Albuquerque against the Albuquerque Wood Scouring Mills.

Pierce v. Old Dominion M. & S. Co., 58 Atl. 323. Quoted with approval, in Irrigation Co. v. Lee, et la, 15 N. M., 567-576; Secs. 954 to 976, Code 1915; Mining Co. v. McClure, 17 N. M. 694.

Upon the appointment of the receiver he became, by operation of law, vested with title to all the real and personal property of Albuquerque Wool Scouring Mills, and the court had no power to withhold from the receivership any of said property.

Sec. 959, Code 1915; Falk v. Whitman Cig. Co. 55 N. J. E. 396; Gallagher v. True Am. Pub. Co., 75 N. J. E. 172; Freeholders v. State Bank, 29 N. J. E. 268.

Bank took notes and mortgage subject to law relating to insolvent corporations.

Nelson v. Hubbard, 17 L. R. A. 375; Lembeck v. Jarvis, etc., Co., 68 N. J. E. 352; Northern P. Ry. Co. v. Wall, 241 U. S. 87; Van Hoffman v. Quincy, 4 Wall. 535.

536    SUPREME COURT OF NEW MEXICO,

Mirabal v. Albu. Wool Scouring Mills, et al., 23 N. M., 534

A. B. McMillen, of Albuquerque, for First National Bank.

Asking trial court to adjudge claim of Bank constitutes invited error.

Heisch v. Bell, 11 N. M. 523, 531; 4 Corpus Juris, p. 700-702.

Receiver had no right to possession of the mortgaged property.

Jones on Mtgs. Sec. 1523, 1524; High on Receivers, Sec. 682; Irrigation Co. v. Lee, 15 N. M. 579; Kinkle v. Camden, etc., Co., 47 N. J. E. 333; Massey v. Camden, etc., Co., 75 N. J. E. 1.

Invited error is not ground for reversal.

Heisch v. Bell & Co., 11 N. M. 531; 4 C. J. 700, 702.

## STATEMENT OF FACTS.

The appellant, Sylvestre Mirabal, a stockholder in the Albuquerque Wool Scouring Mills, a corporation, filed a complaint in the district court of Bernalillo county, seeking an adjudication of insolvency against the said Albuquerque Wool Scouring Mills and the appointment of a receiver; also an injunction against the further exercise of its corporate functions and the winding up of its affairs as an insolvent corporation under the provisions of our statutes. The complaint, however, is unusual in this, that it made the First National Bank of Albuquerque, among others, a party defendant, setting up that the plaintiff is informed and believes that the defendant bank claims to be a creditor of the said corporation in a large amount and to hold mortgages and other evidences of indebtedness upon the property of said defendant corporation as security therefor; that plaintiff is further informed and believes that a large part of the indebtedness so pretended to be secured is not, and never was, a valid indebtedness of the defendant Albuquerque Wool Scouring Mills, but that said evidences of indebtedness were given for the individual indebtedness of James Wilkinson, deceased, who for a time acted as president and general manager of the said corporation. The plaintiff by his prayer asks that

JANUARY TERM, 1918. 537

Mirabal v. Albu. Wool Scouring Mills, et al., 23 N. M., 534

the defendants and all other persons having claims against the Albuquerque Wool Scouring Mills be required to come into the proceeding and set up their respective rights and claims to priority, and that such claims when so set up might be adjudicated and the property sold, and the proceeds of the sale distributed to the persons thereto entitled, in accordance with any priority so ascertained to be adjudged.

The summons was served on the defendant bank on the 2d day of August, 1916, and the notice of hearing was likewise served on the following day. On the 12th day of August, the day fixed for the hearing, the bank appeared and filed objections to the appointment of a receiver, seting up that it had a first mortgage lien upon all of the real estate, machinery, and buildings in which the defendant Albuquerque Wool Scouring Mills carried on its business to secure an indebtedness exceeding $43,000, which indebtedness was past due; wherefore said defendant bank had heretofore requested the trustee named in the deed of trust, executed to secure such indebtedness, to take immediate possession of said real estate and proceed to sell the same under the powers contained therein. The said First National Bank objected to the appointment of a receiver, and especially to any action being taken which would in any way interfere with the possession of said trustee or the right to sell the mortgaged property or any action being taken which would in any way involve costs or expenses, or give the receiver any right or priority for expenses, attorney's fees, or otherwise, superior to the said bank's mortgage lien. The objections to the appointment of a receiver were supported by the affidavit of the president of the said bank to the effect that the Albuquerque Wool Scouring Mills had executed and delivered to said bank its three certain promissory notes aggregating the said sum of $43,000, which were dated January 4, 1913, payable one day after date, copies of which were attached to said affidavit; that at the time of the execution and delivery of said notes the said Albuquerque Wool Scouring Mills executed and delivered to the trustee a certain deed of trust conveying the property therein described for the purpose of securing the

payment of the said notes; that the said trustee had been requested to take immediate possession of the property described in the deed of trust and proceed to sell the same, and pursuant thereto the said trustee had taken possession of said property and had advertised the same for sale. Affiant further represented that the closing down of said business or the appointment of a receiver would greatly prejudice the security of the defendant bank and greatly injure the value of said property, and that such receiver was not necessary for the protection of the property or for making the sale, and that the said deed of trust provided full and ample powers for taking possession of said property and for the sale of said property in accordance with its terms. The affidavit concluded with the denial that the indebtedness above described was the indebtedness of any person other than the said Albuquerque Wool Scouring Mills. An additional affidavit, of similar tenor and effect, of the trustee named in said deed of trust, was also presented in support of the objections to the appointment of a receiver.

At the hearing the plaintiff introduced evidence establishing the insolvency of the defendant corporation and the bank offered the affidavits in support of its objections to the appointment of a receiver. The court in its judgment made findings of fact adjudging the defendant corporation Albuquerque Wool Scouring Mills insolvent and not about to resume its business; that it had executed its notes to the First National Bank aggregating $43,000, which were past due and unpaid, and to secure the payment of said notes had executed a deed of trust to A. B. McMillen, as trustee, conveying certain property described: that the said trustee on the 2d day of August, 1916, took possession of said property and commenced the advertisement of the same for sale, to be made on the 5th of September, 1916, and said trustee had ever since had possession of said property; that the said property described in said deed of trust covers the lands, buildings, and machinery of the Albuquerque Wool Scouring Mills, "being practically all the property of the said defendant"; that the plaintiff is entitled to a receiver of the property of the Albuquerque

Wool Scouring Mills not covered by said deed of trust, but is not entitled to a receiver for the property covered; that the plaintiff is entitled to the statutory injunction. The judgment concluded with the designation of the receiver, and, after defining the powers of said receiver, further provided that all the real and personal property of the defendant, Aubuquerque Wool Scouring Mills, with the exception of the property described in the deed of trust, should forthwith vest in said receiver, and that the defendants and each of them, and all other persons having claims against the defendant, Albuquerque Wool Scouring Mills, be required to come into the proceedings and set up their respective rights and claims to priority, except the First National Bank, as to the property described in the deed of trust. To this judgment the plaintiff excepted, filing his formal objection, and prayed and was allowed an appeal to this court.

## OPINION OF THE COURT.

HANNA, C. J. (after stating the facts as above)—This proceeding was instituted under the provisions of sections 954 to 976, inclusive, Code 1915, which were originally parts of chapter 79 of the Laws of 1905, the General Incorporation Act. The sections were copied, with some modifications, from the New Jersey Corporation laws, and have been before the court for consideration in part in other cases. Sacramento Valley Irr. Co. v. Lee et al., 15 N. M. 567, 113 Pac. 834, 33 L. R. A. (N. S.) 558; Eagle Mining Co. v. Lund, 15 N. M. 696, 113 Pac. 840; Department Store v. Gauss-Langenberg Hat Co., 17 N. M. 112, 125 Pac. 614; State ex rel. Parsons Mining Co. v. McClure, Judge, 17 N. M. 694, 133 Pac. 1063, 47 L. R. A. (N. S). 744, Ann. Cas. 1915B, 1110; and State v. First State Bank, 22 N. M. 661, 167 Pac. 3. The history and object of the sections are discussed in some of these cases. See, also, Pierce v. Old Dominion, etc., Co., 67 N. J. Eq. 399, 58 Atl. 319, and Gallagher v. Asphalt Co. of America, 65 N. J. Eq. 258, 55 Atl. 259.

The First National Bank of Albuquerque, with others, was joined as a party defendant with the Albuquerque

Wool Scouring Mills. The purpose of such joinder was evidently to afford the appellant the opportunity of litigating with the bank the validity of its claim against the Albuquerque Wool Scouring Mills. In Pierce v. Old Dominion, etc., Co., cited supra, the court said:

"Before leaving the consideration of the essential nature of our statutory equitable action against an insolvent corporation, it is important to observe that the almost uniform practice has been to make the corporation the sole defendant in the suit. * * *

"There seems to be no more room for a second or a third defendant than there is in an action to have a person or a corporation adjudged an involuntary bankrupt. * * *"

The bank in this case was not only an unnecessary party, but an improper one.

[1-2] This case turns upon the question of the jurisdiction of the trial court concerning the claim of the First National Bank of Albuquerque. By appellant it is contended that at the time of this adjudication the court was without jurisdiction over the subject-matter of the claim of the bank, for the reason that the only question before the court at that time was the insolvency of the Albuquerque Wool Scouring Mills and the fact that it was not about to resume its ordinary business with safety to the public and advantage to the stockholders. As we have said, the bank was made a party defendant by appellant. It filed an objection to the appointment of a receiver of the property included within the trust deed, on the theory that it, or its trustee, had a better right to the possession thereof than did the corporation or the receiver, and that a receiver was unnecessary therefor, and unnecessary costs would be entailed, partly chargeable to it, on account thereof. The only reason apparent of record for joining the bank as a party defendant is that it afforded the appellant an opportunity to contest the validity of the claim of the bank against the Albuquerque Wool Scouring Mills. The claim was held valid as against the corporation and the receiver was excluded of possession of the trust property.

The statute (section 957, Code 1915) provides:

"The district court, at the time of ordering said injunction, or at any time afterwards, may appoint a receiver or receivers or trustees for the creditors and. stockholders of the cor- ation, with full power and authority to demand, sue for, col- lect, receive and take into their possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description of the corporation, and to in- stitute suits at law or in equity for the recovery of any es- tate, property, damages or demands existing in favor of the corporation," etc.

Section 959 provides:

"All the real and personal property of an insolvent cor- poration, wheresoever situated, and all its franchises, rights, privileges, and effects shall, upon the appointment of a re- ceiver forthwith vest in him and the corporation shall be di- vested of the title thereto."

Section 956, Code 1915, provides for the application for the appointment, and reads as follows:

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, any creditor or stockholder may by complaint set- ing forth the facts and circumstances of the case, apply to the district court for a writ of injunction and the appoint- ment of a receiver or receivers or trustees, and the court being satisfied by affidavit or otherwise of the sufficiency of said application, and of the truth of the allegations con- tained in the complaint, and upon such notice, if any, as the court by order may direct, may proceed in a summary way to hear the affidavits, proofs and allegations which may be offered on behalf of the parties, and if upon such inquiry it shall appear to the court that the corporation has become in- solvent and is not about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders, it may issue an injunction to restrain the corporation and its officers and agents from exercising any of its privileges or franchises and from collecting or receiv- ing any debts, or paying out, selling, assigning or transfer- ring any of its estate, moneys, funds, lands, tenements or ef- fects except to a receiver appointed by the court until court shall otherwise order."

Under the last-quoted section it will be seen that the al- leged insolvent corporation is the only proper party de- fendant.

But the question remains for consideration whether a petitioning stockholder or creditor, having made a lien-

holder or mortgagee a party, and invited it to litigate the validity of its debt and lien in the application for the adjudication of insolvency and appointment of a receiver, is estopped to allege error upon the part of the court in so doing.

Upon his appointment, the receiver, by virtue of the statute, is invested with the title to all the property of the insolvent corporation, real and personal, of every kind and character, and the corporation is divested of the title thereto. Upon his appointment, by virtue of section 957, quoted supra, the receiver has full power and authority to demand, sue for, and collect, receive, and take into his possession all such property. These powers and prerogatives are given to the receiver, when he is appointed, by the statute, not by order of the court. This being true, and title vesting in him by virtue of the statute, and likewise the right to possession, or, to say the least, the right to sue for possession and to recover the same if entitled thereto, the court, at the time of adjudicating the insolvency of the corporation and decreeing that a receiver should be appointed, has not the power, in the same degree, and prior to the appointment and qualification of the receiver, to strip the receiver of these statutory rights and prerogatives.

The reason for this is clearly apparent. If the corporation is insolvent, which question only the court in such a proceeding is called upon to determine, the stockholders and creditors are all mutually interested in all the assets of the corporation. They are not, other than the petitioning creditor or stockholder, before the court; and such petitioning creditor or stockholder is only before the court for one purpose, viz. securing a determination of the single question as to the insolvency of the corporation. In securing the adjudication of this question he is, of course, acting on behalf of all stockholders and creditors, for all are equally interested in the appointment of the receiver and securing the assets of the corporation from further dissipation if it is in fact insolvent. If the corporation is adjudged to be insolvent all are bound by the adjudication, but further than this their rights are not affected.

The one question, which the court under the statute is

empowered to determine, having been decided, and the corporation having been adjudicated to be insolvent, and a receiver appointed, this officer of the court steps in, under the statute, and becomes the impartial representative of all the creditors and stockholders. Unless a referee is appointed, as may be done under the provisions of section 962, Code 1915, all claims should be presented to the receiver.

The receiver, being thus the representative of all the creditors, an adjudication between the receiver and others as to claims or title to property, or other matters affecting the same, is valid and binding, and all are represented in court through the receiver.

In the present case, with only the petitioning stockholder, the insolvent corporation, and one lienholder before the court, it proceeded to pass upon the validity of the trust deed, and to decree, that, as to the property included therein, the receiver should not take possession, thereby depriving all other creditors and stockholders, either directly or through the receiver, of the right to litigate the validity of such trust deed, thereby foreclosing the receiver of his statutory right to sue for such possession.

In this case, if the corporation had no title to the mortgaged premises, the receiver would take none; if the corporation had title, but did not have the right to possession of the mortgaged premises and property, the receiver would have no right to the possession thereof. In other words, the receiver stepped into the shoes of the corporation, and took only such title and rights as it had. He had, or should have, the right to litigate, on behalf of the creditors and stockholders, the validity of the mortgage and the right of the trustee named therein to possession of the mortgaged property. This right the statute assures him, and the court, without a proceeding to which he, as the representative of all the creditors and stockholders, was a party, could not legally preclude him from asserting such right.

But little light is afforded on this question by the decisions of the New Jersey courts, from which state our

statute was taken. In the case of the Consolidated Coal Co. v. National State Bank, 55 N. J. Eq. 800, 38 Atl. 657, the court was asked to and did adjudicate the validity of a lien concurrently with the adjudication of the insolvency of the corporation. On appeal the appellate court held the lien to be invalid, and said:

"Before leaving the case, we deem it proper to state that, in our opinion, the question of the position which the respondent's judgment is entitled to occupy in the distribution of the assets of the chemical company has been brought before the court in an entirely irregular way. An attack by one of the creditors of a corporation on the validity of a claim held by another has no place in a bill filed, in behalf of all the creditors, for a decree of insolvency and the appointment of a receiver. All such questions should be raised after the decree of insolvency is pronounced, in proceedings had before the receiver on the question of the distribution of the assets. But as the party whose judgment has been attacked has been heard in defense of its claim to have it declared a preferred debt, and as the conclusion reached by us is in the interest of those creditors who have not been afforded a hearing in the matter, no rights can be injuriously affected by the irregularity of the proceedings."

[3] Appellee argues that the alleged errors contended for by appellant were invited, and that invited error is not ground for reversal of a judgment. This is true as to all errors not jurisdictional. As to errors relating to jurisdiction, however, the better rule is that a plaintiff against whom judgment is rendered is not estopped to assert, on appeal or error, that the court to which he resorted had no jurisdiction of the subject-matter of the suit or of the person of the defendant. 4 C. J. 700.

In an early case (Capron v. Van Noorden, 2 Cranch, 126, 2 L. Ed. 229) the Supreme Court of the United States held that a plaintiff may assign for error the want of jurisdiction in that court to which he has chosen to resort.

The same rule was announced in the case of United States v. Huckabee, 16 Wall. 414, 21 L. Ed. 457.

In the case of Railroad Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462, the court said:

This court will, "where no motion is made by either party, on its own motion, reverse such a judgment for want of jurisdiction, not only in any cases where it is shown negatively

\* \* \* that jurisdiction does not exist. but even when it does not appear affirmatively that it does exist."

Following the court said :

"It is true that the plaintiffs below, against whose objecttion the error was committed, do not complain of being prejudiced by it; and it seems to be an anomaly and a hardship that the party at whose instance it was committed should be permitted to derive an advantage from it; but the rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first of this court and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it. This rule was adopted in Capron v. Van Noorden, 2 Cranch, 126 (2 L. Ed. 229), decided in 1804, \* \* \* on the application of the party against whom it had been rendered in the circuit court, for want of the allegation of his own citizenship, which he ought to have made to establish the jurisdiction which he had invoked."

In the case of Freer v. Davis, 52 W. Va. 1, 43 S. E. 164, 59 L. A. R. 556, 94 Am. St. Rep. 895, the court held that, as consent cannot confer jurisdiction, a plaintiff upon whose bill there is a final decree and adjudication against him, upon matters set up in the bill, is not estopped to assert upon appeal that the court to which he resorted had no jurisdiction of the subject-matter. See, also, to the same effect, Wildman v. Rider, 23 Conn. 171; Bell v. Fludd, 28 S. C. 313, 5 S. E. 810; Watson, Adm'r, v. May, 6 Ala. 133; Sprinkle v. Duty, 54 W. Va. 559, 46 S. E. 557; Jordan v. Dennis, 7 Metc. (Mass.) 590.

In the instant case the proceeding was special, and was governed solely by the provision of the statute. The statute limits the jurisdiction of the court, upon application for the adjudication of the insolvency of the corporation, the writ of injunction, and the appointment of a receiver to the inquiry as to whether the corporation is insolvent and is not about to resume its business with

safety to the public and advantage to the stockholders. This is the only question with which it is invested with power to determine at such hearing. The adjudication of liens, claims, rights to property, and other like questions, under the statute, follow the appointment of the receiver.

Appellee insists that it is not proper for the court to charge the expenses of the receivership against the property covered by its lien, and, further, that the trustee named in the deed of trust should have possession of the same, and that it should be allowed to proceed to foreclose the mortgage under the powers contained in the deed of trust. These are all questions which should be presented to the district court, at the proper time, for determination.

For the reasons stated, the portion of the judgment of the district court adjudicating the validity of the trust deed and awarding possession of the property covered thereby to the trustee named therein will be reversed, and it is so ordered.

ROBERTS, J., concurs. PARKER, J., being absent, did not participate.